UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO: 3:17-cv-1128-J-20OJBT

FLORIDA DEFENDERS OF THE
ENVIRONMENT, a Florida not-for-
profit Corporation, BRUCE KASTER,
and JOSEPH LITTLE,

     Plaintiffs,

v.

UNITED STATES FOREST SERVICE,

     Defendant.

_____/

FILED
2017 OCT 10 AM 9: 04
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This is an action to remedy the ongoing destruction of the Ocklawaha watershed stemming from the dredging of the Cross Florida Barge Canal, and the construction and ongoing maintenance of the Kirkpatrick Dam impoundment (*aka* Rodman Dam). This action also seeks to compel Defendant U.S. Forest Service ("the USFS") to assert its sovereign interest in the occupied impoundment acreage, and to compel the enforcement of the terms of a Record of Decision and Special Use Permit – the only instruments authorizing the State of Florida's continued occupation of federal lands.

2.    For over 50 years, the Kirkpatrick Dam, a leftover infrastructure relic from a long-since abandoned project, has occupied USFS property and impounded the Ocklawaha River to its severe ecological detriment. Completed in 1968, the dam's sole purpose was to facilitate the construction of the Cross Florida Barge Canal—a project that was promptly halted by President Richard Nixon's Executive Order in 1971.

3.      Following the official de-authorization of the Canal by Congress in 1990, the U.S. Army Corps of Engineers transferred its land interests and structures in the Canal to the State of Florida in 1991. Given that 167.46 acres together with a portion of Kirkpatrick Dam and Eureka Lock were on USFS land, the State had to apply for a Special Use Permit ("the SUP") to occupy the federal land upon which they sat in the Ocala National Forest.

4.      The SUP was issued in 1994 and expired in 1998. The SUP lacked a renewal clause and a timely request for renewal was never made. Nevertheless, the SUP was extended to 2002. The  extension  was  provided  to  allow  the  Florida  Department of Environmental Protection ("FDEP") to adhere to the implementation schedule for partial restoration of the Ocklawaha River. Restoration never occurred, and the SUP was never renewed. Today, FDEP is occupying Ocala National Forest both without a permit and in violation of the terms of the original SUP, long since expired. Those terms mandate compensation for damage to natural resources on USFS land by the permit holder, mandate removal of structures built on Forest Service land by the holder upon termination or expiration of the permit, and mandate restoration of the land by the holder. The continued occupation of Ocala National Forest has also amounted to continuing and damaging practices that violate the USFS Forest Plan for National Forests in Florida, in turn effecting a violation of the National Forest Management Act.

5.      On December 5, 2016, Plaintiffs (then-Petitioners) Bruce Kaster and Joseph Little ("Kaster and Little") petitioned the Secretary of Agriculture and the Chief of the USFS, pursuant to 5 U.S.C. §553(e), to (1) issue and implement rules to enforce the terms of the special use permit issued by USFS to FDEP, and (2) issue rules to redress the continuing failure of USFS to manage the Ocala National Forest in a manner that furthers the desired future conditions, goals, and objectives of the Forest Plan for the National Forests in Florida (the "Petition").

6.      Bruce Kaster currently serves on the Board of Trustees for Plaintiff Florida Defenders of the Environment ("FDE"), and Joseph Little currently serves as FDE's Vice President. Both have been members of FDE for over a combined 80 years.

7.      On March 7, 2017, Kaster and Little received, via undersigned counsel, a letter from Glen P. Casamassa, Associate Deputy Chief of the National Forest System, USFS. That letter constituted both a denial of the December 5, 2016 Petition and final agency action by the USFS regarding the same.

8.      Kaster and Little had opted to pursue a Petition for Rulemaking to provide the USFS a platform and justification to proceed with facilitating a multi-stakeholder solution as an alternative to litigation.

9.      Following decades of inaction on the part of USFS to enforce the terms of the expired special use permit governing FDEP's occupation of National Forest Land, punctuated by the USFS's recent refusal to engage in the benign process of rulemaking to yield an acceptable result for all parties, the perpetual state of legal limbo that has extended for decades forced the parties to seek legal action to prevent the permanent mismanagement of federal lands to ensure restoration of the Ocklawaha River watershed, and protection of the same for future generations.

## PARTIES

10.      Plaintiff Florida Defenders of the Environment was founded in 1969, and is one of the oldest environmental non-profit organizations in Florida. FDE's primary focus is the preservation, protection, and restoration of Florida's freshwater resources, but over its long history, it has expanded to include environmental education initiatives and the conservation of public lands. Initially organized for the purpose of addressing the threat posed to the Ocklawaha River by the

Cross Florida Barge Canal, FDE has continued to focus its efforts on repairing the damage caused by that project since the deauthorization of the Canal in 1990.

11.     FDE has also helped to protect the Osceola National Forest from mining, and has worked to improve the management of Ocala National forest and several state parks. Most notably, FDE played a key role in the designation of former Barge Canal lands as a greenway managed for conservation[1].

12.     Plaintiff Bruce Kaster lives in Ocala, Florida. He is a former U.S. Army Corps of Engineers officer and is currently a practicing lawyer. He has a long history of environmental activism, and he has been a member of FDE for over thirty years. He is currently a member of the Board of Trustees for FDE.

13.     Kaster also was appointed by Governor Lawton Chiles to the Ocklawaha Basin Board in 1983 where he served as Chairperson until 1987. Since that time, he has had special and unique concerns about the water management issues regarding the Ocklawaha River Basin, an area he has been recreating on for decades.

14.     Plaintiff Joseph Little serves as FDE's Vice President, and is currently a Professor of Law (Emeritus) at the University of Florida where he has taught since 1967. Little has been a member of FDE for nearly fifty years, and has taught law students on 5 continents.

15.     Defendant USFS is an agency of the United States Department of Agriculture. The USFS is responsible for the administration and management of National Forest Lands subject to this action and compliance with all pertinent laws including the requirements set forth in the Federal Land Policy Management Act, 43 U.S.C. § 1701 et seq. ("FLPMA") and its implementing

---

[1] The Marjorie Harris Carr Cross Florida Greenway is 110 miles long, spanning from Yankeetown on Florida's west coast to just south of Palatka on the St. Johns River near Florida's east coast.

4

regulations; the National Forest Management Act, 16 U.S.C. § 1600 ("NFMA"), and the Administrative Procedures Act 5 U.S.C. §701 ("APA").

<u>**JURISDICTION AND VENUE**</u>

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. §2201-2 (declaratory judgment and injunctive relief) and 5 U.S.C. §701, et seq. (APA).

17.    Venue is proper pursuant to 28 U.S.C. §1391(e)(1) because this is an action against the United States agencies and officials and because a substantial part of events and omissions giving rise to the claims in this case occurred in this District.

<u>**FACTUAL ALLEGATIONS**</u>

**A. Historical Background**

18.    Congress authorized the construction of the Canal in 1942, which was originally designated as a 107-mile ship canal connecting Palatka, Florida on the St. Johns River to Yankeetown, Florida on the Gulf of Mexico. The construction of the Canal necessitated the impoundment of the Ocklawaha River.[2]

19.    The Kirkpatrick Dam was built in 1968, creating the Rodman Reservoir as a result of the Ocklawaha's impoundment. On January 19, 1971, President Nixon ordered "a halt to further construction of the Cross Florida Barge Canal to prevent potentially serious environmental damages."[3] This order was issued a week before a Federal District Court issued a preliminary injunction enjoining further construction of the Canal, after one-third of the Canal's structures

---

[2] See, e.g., The Canal Authority of the State of Florida v. Callaway, No. 71-92-Civ-J, No. 71-486-Civ-J, No. 71-489-Civ-J, No. 71-652-Civ-J, No. 71-26- Civ-Oc (M.D. Fla. Feb 4, 1974) (Opinion and Judgment).

[3] U.S. v. 2,997.06 Acres of Land, 471 F.2d 320, 325 n.8 (5th Cir. 1972).

were completed.[4] The Canal was officially de-authorized by Congress in 1990[5], and the U.S. Army Corps of Engineers ("the Corps") transferred their land interests and structures in the Canal to the State of Florida in 1991.

20.     The Kirkpatrick Dam extends for about 1.3 miles (including the earthen portion), with approximately a half-mile of that length occupying National Forest System lands.

21.     When the Kirkpatrick Dam was completed, its resulting Rodman Reservoir flooded approximately 9,000 acres (about 14 square miles) of floodplain forest, including approximately 600 acres of National Forest System lands. After the Corps transferred their land interests and structures in 1991, the State of Florida subsequently applied for and was issued a Special Use Permit ("the SUP") by the USFS to authorize Kirkpatrick Dam and Eureka Lock and Dam to occupy National Forest lands in the Ocala National Forest.

22.     The SUP (attached hereto as Exhibit "A") was issued on January 21, 1994 and expired on December 31, 1998. The SUP covers 167.46 acres and was issued for the purpose of maintaining portions of Kirkpatrick Dam and Eureka Lock. The SUP is a license to use federally owned land and explicitly does not grant any permanent or possessory interest in real property. Furthermore, the SUP includes conditions that requires compliance with all Federal, State, and county laws.

23.     When the SUP expired at the end of December 1998, it was extended to provide time for the State to apply for a new occupancy permit describing their management intentions and environmental analysis to support their proposal. The extension was provided to FDEP to allow

---

[4] *Environmental Defense Fund v. Corps of Engineers*, 324 F.Supp. 878 (D.D.C. 1971) (injunction was to apply upstream on the Ocklawaha River from the Eureka Dam and Lock and any portion east of the completed portion of the western segment of the canal).
[5] Pub. L. No. 101-640 sec. 402, 104 Stat. 4644 (Nov. 28, 1990).

the agency to adhere to the implementation schedule for partial restoration of the Ocklawaha River (discussed below), but FDEP ultimately refused to adhere to that schedule.

24.     The USFS, as a result of expiration of the extended SUP in 2002, directed FDEP to reapply for the SUP in 2010 in order to allow for coordinated maintenance of the USFS lands affected by the FDEP's occupancy.[6]  The order by the federal agency went unheeded by FDEP and to this day, no permit exists authorizing the State's continued use and occupation of federal land.

25.     The terms of the SUP do not authorize mere renewal of the permit.  Rather, at the end of the Authorized Period, which expired at midnight on December 31, 1998, expiration shall occur by operation of law and shall not require notice, any decision document or any environmental analysis or other documentation.[7]

26.     A special use permit may only be renewed when the permit authorizes renewal.[8] Special uses may be reauthorized upon expiration so long as such use remains consistent with the decision that approved the expiring special use.  If significant information or circumstances have developed, appropriate environmental analysis must accompany the decision to reauthorize the special use.[9]  When a special use permit does not provide for renewal, it is discretionary with the authorized office, upon request from the holder and prior to its expiration, whether or not authorization shall be renewed.[10]  But such a timely request was never made here.

27.     In the intervening years, a Notice of Intent to prepare an Environmental Impact Statement for the Occupancy and Use of National Forest Lands and Ocklawaha River Restoration

---

[6] See Letter from Forest Supervisor Jeheber Matthews to FDEP Secretary Ballard, March 19, 2010.
[7] See SUP, §II(A).
[8] 36 C.F.R. 251.64
[9] Id.
[10] Id.

was published on March 20, 2001.[11] On or about December 17, 2001, Forest Supervisor Kearney signed the Record of Decision ("ROD") for the Occupancy and Use of National Forest Lands and Ocklawaha River Restoration.

28.     This decision (1) approved the *conditional* continued use and occupancy of National Forest lands by Kirkpatrick Dam, Rodman Reservoir and Eureka Dam and Lock while the State of Florida was to complete restoration of the Ocklawaha River, and (2) issued the Final Environmental Impact Statement ("FEIS") for this project. The ROD and FEIS were published on January 18, 2002.[12]

29.     The 'Proposed Action' in this FEIS and its accompanying ROD authorized the continued occupancy and use of National Forest System lands for the above-referenced structures, while the State proceeded to conduct "partial restoration of the Ocklawaha River" over a four-year period. As outlined in the ROD:

> "Allowing the occupancy and use of National Forest land will require the State of Florida to obtain a Special Use Permit for Kirkpatrick Dam, Eureka Lock and Dam, and flooding of National Forest land. The implementation of this decision will be the reissuing of the Special Use Permit, which allows the continued use <u>as long as progress is being made on the restoration effort based on the proposed schedule in the Special Use Permit.</u> . .. If progress is not being made in accordance with the phased time line scheduled, then that would constitute grounds for revocation of the Special Use Permit."[13] (Emphasis added).

30.     On or about May 30, 2002, the USFS provided the referenced SUP to the Florida Department of Environmental Protection's ("FDEP") Office of Greenways and Trails. However,

---

[11] 66 Fed. Reg. 15,686 (March 20, 2001).
[12] 67 Fed. Reg. 2,651 (Jan. 18, 2002).
[13] ROD, at p.11.

on or about July 19, 2002, FDEP refused to accept the permit[14]. As a result, the decision by the USFS to authorize occupancy of the structures on National Forest Service lands, and the resulting flooding of hundreds of acres of additional National Forest lands, was never validly implemented. The original 1994 SUP, which expired in 1998 and again, following an extension (which Plaintiffs contend was invalidly granted under 36 C.F.R § 251.64), in 2002, was never reissued.

31.     The SUP contains terms that mandate compensation for damage to natural resources on USFS land by the permit holder,[15] terms that mandate removal of structures built on USFS land by the holder upon termination or expiration of the SUP,[16] and terms that mandate restoration of the land by the holder.[17] The continued occupation by USFS land in Ocala National Forest also has amounted to continuous and damaging practices that run counter to the USFS Forest Plan for National Forests in Florida, which effects a violation of the National Forest Management Act and the SUP's terms.[18]

32.     The termination of the SUP, by its terms, therefore mandates the removal of not only 1,000 feet of the Kirkpatrick Dam west of the spillway, but the additional 1,500 feet of the dam that is encumbering National Forest Land – land which the USFS is mandated to manage pursuant to the Forest Plan for National Forests in Florida.

## B. The Petition for Rulemaking

33.     On December 5, 2016, Kaster and Little petitioned the Secretary of Agriculture and the Chief of the USFS, pursuant to 5 U.S.C. §553(e), to (1) issue and implement rules to enforce

---

[14] Although the basis for refusing to accept the new SUP terms is not explicit in the rejection of the same, upon information and belief, the basis for refusal was because FDEP did not want to comply with the terms that required restoration on a scheduled basis.
[15] See SUP, §IV(B)(1).
[16] Id, §V(D).
[17] Id, §IV(B)(1).
[18] Id, §III(D).

the terms of the SUP, and (2) issue rules to redress the continuing failure of USFS to manage the Ocala National Forest in a manner that furthers the desired future conditions, goals, and objectives of the Forest Plan for the National Forests in Florida.[19]

34.     On March 7, 2017, Kaster and Little received, through undersigned counsel, a letter from Glen P. Casamassa, Associate Deputy Chief of the National Forest System, USFS (the "Denial Letter", attached hereto as Exhibit "B"). That letter constituted both a denial of the December 5, 2016 Petition for Rulemaking and final agency action by the USFS regarding the same.

35.     The USFS, in its Denial Letter, premised its refusal to initiate rulemaking on the contention that the 1994 SUP has not, in fact, expired, and stated:

> Although the expiration date for the DEP permit has passed, the DEP permit is still in effect. Since DEP submitted a timely application for reissuance of the permit, under 5 U.S.C. §558(c) of the APA, the DEP permit has not expired and DEP may continue the use and occupancy of National Forest System lands until the application is accepted or denied by the Forest Service. Since the DEP permit is still in effect, the Forest Service is not in violation of the FSM provisions cited in the petition.

36.     5 U.S.C. §558(c) states, in pertinent part:

> Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given opportunity to demonstrate or achieve compliance with all lawful requirements. When the licensee has made <u>timely and sufficient</u> application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire <u>until the application has been finally determined</u> by the agency. 5 U.S.C. §558(c)(2). (emphasis added)

---

[19] That Petition for Rulemaking is entitled "Implementation of Rules to Adhere to Management Measures for the Maintenance of Wildlife Habitat on National Forest Land in the Ocala National Forest and Enforce the Terms of the State Special Use Permit."

Yet this reasoning is detached from the decades of history that mandate restoration on a timely, scheduled basis as codified in the Record of Decision and SUP. Furthermore, it applies the wrong law and ignores the fact that the original SUP never authorized renewal. The controlling law for renewals of special use permits for USFS land is controlled by 36 C.F.R § 251.64(b). As explained above, FDEP was required to make a request for renewal prior to the expiration at midnight December 31, 1998. Such a request was never made until seven (7) years ago.

37.     FDEP's application cannot be found to be "sufficient" under 5 U.S.C. § 558(c) or timely under 36 C.F.R. § 251.64(a) and (b).   As part of the condition for the issuance of the new SUP, the USFS drafted an operating plan for the maintenance of the portion of the Kirkpatrick Dam situated on USFS lands, as well as the lands inundated by Rodman Pool. Critically, the USFS also required FDEP to execute the newer SUP within thirty (30) days of March 19, 2010.  FDEP refused.

38.     As a result, under 5 U.S.C. § 558(c), the FDEP's application for the newer, invalidly issued SUP was finally determined and was lapsed on April 18, 2010.

39.     The failure of FDEP to execute the conditional operating plan required by USFS resulted in an insufficient application for a newer SUP by FDEP.  5 U.S.C. § 558(c) does not serve to toll insufficient applications merely because the holder of the SUP refused to comply with the required conditions.

40.     In addition to USFS's incorrect application of 5 U.S.C. § 558(c) to the instant facts, the Denial Letter also alleges that Kaster and Little lack standing to seek enforcement of the original SUP.  The USFS explains that, "the DEP permit is executed by the Forest Service and DEP.  Petitioners are not a party to the DEP permit and do not have a right to enforce it, by

rulemaking or otherwise. In addition, enforcement of special use authorizations is committed to the discretion of the Forest Service."

41.     Standing is not relevant to Kaster and Little's capacity to petition the USFS for rulemaking under 5 U.S.C.A. § 553(e).

42.     The USFS notes in its Denial Letter, "...the forest plan merely states, 'the Forest Service is committed to work in partnership with the State of Florida in the Ocklawaha River Restoration Project'. This remains the case." (emphasis added). This contention by USFS rings particularly hollow: Since the final determination and lapse of FDEP's application for a new SUP over seven (7) years ago, there has been a complete absence of evident motivation by of FDEP and USFS to "work in partnership" on any aspect of restoring the Ocklawaha River watershed.[20] A perpetual state of inaction is not what was contemplated by the Record of Decision or the initial SUP.

43.     The USFS incorrectly applies 5 U.S.C. § 558(c) to contend that the 1994 SUP has not expired, and is apparently content to ignore its own conditions that it imposed on FDEP in order for the SUP to be renewed—namely, the requirements that FDEP implement the USFS conditional operating plan (See Paragraph 33 above), and that FDEP execute the newer SUP within thirty (30) days of March 19, 2010.

44.     Furthermore, there are provisions of the Code of Federal Regulations that set forth actions required to be taken by the holder of a SUP upon termination of that SUP.

---

[20]The Denial Letter explains that "The current Land and Resource Management Plan for the National Forests in Florida provides no specific direction for the Ocklawaha River." This conclusion is seemingly made as partial justification of denial of Kaster and Little's Petition, which is confounding due to the decades-worth of environmental damage to USFS lands. The fact that the USFS provides for no specific "direction" for management or restoration of the Ocklawaha River watershed simply highlights the need for USFS to conduct rulemaking even more.

45.     In light of the insufficiency of the reasoning behind the USFS Denial Letter, the incorrect application of 5 U.S.C. § 558(c) to deny the Petition for Rulemaking, and the unreasonable delay of the USFS in both enforcing the terms of the SUP and in redressing its continuing failure to manage USFS land in a manner that furthers the desired future conditions, goals and objectives of the Forest Plan for the National Forests in Florida, Plaintiffs Kaster, Little, and FDE (collectively, "Plaintiffs") seek declaratory and injunctive relief.

## COUNT I – VIOLATION OF FLPMA

(Violation of FLPMA Special Use Permit Requirement 43 U.S.C. §1761-66; 36 C.F.R. § 251.50-65)

46.     Plaintiffs hereby reallege and incorporates by reference the allegations contained in Paragraphs 1 through 45 as though fully set forth herein.

47.     The USFS is authorized under FLPMA, 43 U.S.C. §1761(a)(1) to grant or renew special uses on federal lands for various uses, including reservoirs such as the Rodman Reservoir. Special use permits for such reservoirs are subject to terms and conditions that, inter alia, ensure compliance with federal and state laws regarding water quality and environmental protection that "minimize damage to scenic and esthetic values and fish and wildlife habitat and otherwise protect the environment." 43 U.S.C. § 1765. However, the USFS has violated the FLPMA by allowing FDEP to continue to occupy a portion of the Kirkpatrick Dam, Eureka Lock and federal lands without a valid special use permit in effect.

48.     FDEP's continued occupation and use of the land and infrastructure must be ceased by the USFS unless and until it issues a valid special use permit.

49.     The SUP does not provide for renewal, and because the permit expired and was not timely reapplied for before its expiration, the USFS lacks the discretionary authority to renew and/or reissue a new permit. 36 C.F.R. § 251.64, 251.56(b)(1).

50.     If the USFS decides to issue a new SUP to FDEP, the USFS may need to consider conditions to a new SUP because new information and new circumstances have occurred since the permit was issued in 1994. Specifically, the ROD and FEIS that were issued by USFS in 2001 determined that partial restoration of the Ocklawaha River over a four year period in a phased time line was the most appropriate decision for the Ocklawaha River ecosystem. Yet sixteen years have passed without any attempt to adhere to one aspect of the scheduled time line. As such, the USFS has failed to comply with its own environmental conclusions set forth in the FEIS and ROD and as a result, this is a de facto violation of the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. ("NEPA").

51.     For these reasons, the USFS' actions in allowing FDEP to continue its occupation and operation of the dam and lock without a valid SUP are arbitrary, capricious, and otherwise not in accordance with applicable law under the APA, 5 U.S.C. § 701 et seq.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

(1)     Adjudge and declare that the USFS' action of allowing FDEP to continue operation of canal and reservoir infrastructure and occupation of federal lands in the absence of a valid SUP violates the FLPMA and the APA;

(2)     Issue an injunction requiring FDEP to apply for a new SUP;

(3)     Order the USFS to comply with FLPMA, NFMA, NEPA and the APA in connection with FDEP's continued occupation; and

14

(4)     Grant Plaintiffs their fees, costs, and expenses, including reasonable attorneys'

fees as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(5)     Grant Plaintiffs such additional and further relief as this Court deems just and

proper.

## COUNT II – DECLARATORY RELIEF

(Declaration that the FDEP's Application to Renew the 1994 SUP was Finally Determined
and Lapsed in 2010, and that USFS's Denial of Petition for Rulemaking on that Basis Constitutes
Agency Action that is Arbitrary, Capricious, and Not in Accordance with Law under the APA)

52.     Plaintiffs hereby reallege and incorporates by reference the allegations contained

in Paragraphs 1 through 51 as though fully set forth herein.

53.     The Administrative Procedure Act (the "APA") gives "interested persons" the right

to petition an agency for rulemaking.[21]

54.     Kaster and Little are officers of FDE, and are "interested persons" under 5 U.S.C.

§ 553(e).

55.     The Denial Letter constitutes "final agency action" within the meaning of the

Administrative Procedure Act.

56.      Final agency action for which there is no other adequate remedy in a court is

subject to judicial review.[22]

57.     The APA defines "agency action" as "the whole or a part of an agency rule, order,

license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." (emphasis added).[23]

---

[21] 5 U.S.C. §553(e).
[22] 5 U.S.C. §704.
[23] 5 U.S.C. §551(13).

58.     As a result, the Denial Letter is subject to judicial review by this court.

59.     "In a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgement or decree and shall be reviewable as such." 28 U.S.C. §2201(a).

60.     This Court has "federal question" jurisdiction in the instant case, and there exists "a case of actual controversy" between the parties as to whether the 1994 SUP is still in effect.

61.     USFS contends that the SUP that permitted FDEP to occupy National Forest Land has not expired, and is therefore still in effect, pursuant to 5 U.S.C. §558(c) (see paragraphs 32 and 33, above).

62.     Plaintiffs contend that FDEP's application to renew the SUP cannot be found to be "sufficient" under 5 U.S.C. §558(c), and that therefore that application for the newer SUP was finally determined and was lapsed on April 18, 2010.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

(1)     Adjudge and declare that the 1994 SUP has expired,

(2)     Adjudge and declare that FDEP's application to renew that permit has lapsed and cannot be found to be "sufficient" under 5 U.S.C. §558(c);

(3)     Adjudge and declare that the USFS's denial of the Petition for Rulemaking by virtue of incorrect application of 5 U.S.C. §558(c) is "arbitrary, capricious, and otherwise not in accordance with law" under 5 U.S.C. §706(2)(a) of the APA;

(4)     Order the USFS to comply with the APA in connection with FDEP's continued

occupation; and

(5)     Grant Plaintiffs their fees, costs, and expenses, including reasonable attorneys'

fees as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(6)     Grant Plaintiffs such additional and further relief as this Court deems just and

proper.

## COUNT III—DECLARATORY RELIEF

(Declaration that the USFS's Continuing Failure to Enforce the Terms and Conditions of the
Expired SUP Against FDEP Constitutes Agency Action Unlawfully Withheld or Unreasonably
Delayed under the APA)

63.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in

Paragraphs 1 through 62 as though fully set forth herein.

64.     An actual and substantial controversy exists between Plaintiffs and USFS as to their

respective legal rights and duties.  USFS contends that the SUP that permitted FDEP to occupy

National Forest Land has not expired, and is therefore still in effect, pursuant to 5 U.S.C. §558(c)

(see paragraphs 28 and 29, above).  Plaintiffs contend that FDEP's application to renew the SUP

cannot be found to be "sufficient" under 5 U.S.C. §558(c), and that therefore that application for

the newer SUP was finally determined and was lapsed on April 18, 2010.

65.     As result, Plaintiffs contend that FDEP's SUP has expired, and USFS's application

of 5 U.S.C. §558(c) as a basis for the Denial Letter is not in accordance with law.

66.     Upon revocation or termination of a special use authorization, the holder must

remove within a reasonable time the structures and improvements and shall restore the site to a

condition satisfactory to the authorized officer, unless the requirement to remove structures or

improvements is otherwise waived in writing or in the authorization.[24]  No such waiver, explicit or implied, exists here.

67.     A special use authorization terminates when, by its terms, a fixed or agreed-upon condition, event, or time occurs.[25]  In the case of FDEP's expired SUP, the permit itself mirrors the above language, and provides, "[f]or example, the permit terminates at expiration."[26]  "If the holder fails to remove the structures or improvements within a reasonable period, as determined by the authorized officer, they shall become the property of the United States, but holder shall remain liable for the costs of removal and site restoration."[27]

68.     Therefore, the SUP has been terminated via expiration, and the USFS has failed to enforce its own regulations that are triggered by that expiration.  Plaintiffs contend that USFS's inaction constitutes agency action unlawfully withheld and unreasonably delayed under the APA.

69.     This case is presently justiciable because the USFS's Denial Letter constitutes final agency action that has caused, and will continue to cause cognizable injury to Plaintiffs.

70.     Plaintiffs are directly, adversely, and irreparably affected by USFS's incorrect application of 5 U.S.C. §558(c) to deny the Petition for Rulemaking, and the unreasonable delay of the USFS in enforcing the terms of the SUP, enforcing its own regulations regarding required actions upon the expiration of an SUP, and in redressing its continuing failure to manage USFS land in a manner that furthers the desired future conditions, goals and objectives of the Forest Plan for the National Forests in Florida.  A judicial determination of rights and responsibilities arising from this actual controversy is necessary and appropriate at this time.

---

[24] 36 C.F.R. §251.60(h)(2)(i).
[25] 36 C.F.R. §251.60(a)(2)(iii).
[26] *See* SUP, Part V, Subpart A.
[27] 36 C.F.R. §251.60(h)(2)(i).

71.     "In a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgement or decree and shall be reviewable as such." 28 U.S.C. §2201(a).

72.     This Court has "federal question" jurisdiction in the instant case, and there exists "a case of actual controversy" between the parties as to whether the SUP is still in effect, and as a result, whether the USFS has unlawfully withheld and unreasonably delayed action under the terms of the SUP.

73.     The SUP contains terms that mandate compensation for damage to natural resources on USFS land by the permit holder,[28] terms that mandate removal of structures built on USFS land by the holder upon termination or expiration of the SUP,[29] and terms that mandate restoration of the land by the holder.[30]

74.     The original 1994 SUP expired first in 1998, and again in 2002 following an extension.

75.     Since the final determination and lapse of FDEP's application for a new SUP in 2010, over seven (7) years ago, the USFS has failed to enforce any of the SUP terms that took effect upon the expiration of that permit.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

---

[28] *See* SUP, §IV(B)(1).
[29] Id, §V(D).
[30] Id, §IV(B)(1).

(1)     Adjudge and declare that the USFS's failure to enforce the terms and conditions governing expiration of the SUP constitutes "agency action unlawfully withheld," and "unreasonably delayed" under 5 U.S.C. §706(1) of the APA;

(2)     Order the USFS to comply with the APA in connection with FDEP's continued occupation; and

(3)     Grant Plaintiffs their fees, costs, and expenses, including reasonable attorneys' fees as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(4)     Grant Plaintiffs such additional and further relief as this Court deems just and proper.

## COUNT IV—DECLARATORY RELIEF

(Declaration that USFS's Continuing Failure to Enforce its Own Regulations Triggered by the Termination of a Special Use Authorization Constitutes Agency Action Unlawfully Withheld or Unreasonably Delayed under the APA)

76.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 75 as though fully set forth herein.

77.     "In a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgement or decree and shall be reviewable as such." 28 U.S.C. §2201(a).

78.     This court has "federal question" jurisdiction in the instant case, and there exists "a case of actual controversy" between the parties as to whether the SUP is still in effect, and as a result, whether the USFS has unlawfully withheld and unreasonably delayed enforcement of its own regulations that were triggered by the expiration of the SUP.

79.     A special use authorization terminates when, by its terms, a fixed or agreed-upon condition, event, or time occurs.[31] Upon revocation or termination of a special use authorization, the holder must remove within a reasonable time the structures and improvements and shall restore the site to a condition satisfactory to the authorized officer, unless the requirement to remove structures or improvements is otherwise waived in writing or in the authorization.[32]

80.     Since the 1994 SUP expired and has not been renewed, the USFS's own regulations governing action required by FDEP, the holder, were triggered first at the final expiration of the original SUP in 2002 and again upon the final determination and lapse of the FDEP's application for renewal in 2010.

81.     Upon neither of those two triggering events has USFS taken any action to implement those regulations. This inaction is not in accordance with law, and is resulting in continuing damage to USFS lands.

82.     The inaction of the USFS as to enforcement of its own regulations has spanned over fifteen (15) years since the 2002 expiration of the 1994 SUP, and has spanned over seven (7) years since the final determination and lapse of the FDEP's application for renewal in 2010.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter a judgment providing the following relief:

(1)     Adjudge and declare that the USFS's failure to enforce 36 C.F.R. §251.60(h)(2)(i) constitutes "agency action unlawfully withheld," and "unreasonably delayed" under 5 U.S.C. §706(1) of the APA.

---

[31] 36 C.F.R. §251.60(a)(2)(iii).
[32] 36 C.F.R. §251.60(h)(2)(i).

(2)     Order the USFS to comply with the APA in connection with FDEP's continued occupation; and

(3)     Grant Plaintiffs their fees, costs, and expenses, including reasonable attorneys' fees as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(4)     Grant Plaintiffs such additional and further relief as this Court deems just and proper.

## COUNT V—MANDATORY INJUNCTIVE RELIEF

(Mandatory injunction compelling the USFS to enforce the terms and conditions of the SUP and its own regulations)

83.     Plaintiffs hereby reallege and incorporate by reference the allegations contained in Paragraphs 1 through 82 as though fully set forth herein.

84.     Absent the issuance of a mandatory injunction to compel the USFS to enforce the terms of the SUP governing expiration, and its own regulations governing the same, irreparable harm in the form of continuing damage to Ocala National Forest and the Ocklawaha River watershed will result.

85.     The harm to USFS by the issuance of a mandatory injunction is outweighed by the harm that will be incurred by Plaintiffs by the denial of injunctive relief.

86.     Plaintiffs are likely to succeed on the merits of this action, as the declaratory and injunctive relief sought by Plaintiffs hinges on this court's determination of whether the SUP has expired. Plaintiffs have demonstrated that the 1994 SUP has expired, and that FDEP's application to renew that permit has lapsed and cannot be found to be "sufficient" under 5 U.S.C. §558(c).

87.     The public interest favors the grant of mandatory injunctive relief in this case. The Plaintiffs are asking this court to compel enforcement of permit conditions and USFS regulations

22

that are designed to effect the very purpose of the USFS—the management and protection of National Forest Lands for the citizens of the United States. To continue to allow the USFS to ignore its obligations under the SUP and the CFR would only serve to perpetuate the unpermitted occupancy and damage of Ocala National Forest and the Ocklawaha River watershed by FDEP via the presence of the long-obsolete Kirkpatrick Dam.

88.     Plaintiffs have no plain, speedy or adequate remedy at law.

89.     Accordingly, mandatory injunctive relief is appropriate.

90.     "Further necessary or proper relief based on a declaratory judgement or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgement." 28 U.S.C. §2202.

91.     Plaintiffs respectfully request that this Court issue a mandatory injunction compelling the USFS to enforce the terms and conditions of the SUP at issue in this case, and to compel the USFS to enforce its own regulations that are triggered by the termination of a special use authorization, as stated above.

WHEREFORE, Plaintiffs respectfully requests that this Court grant it the following relief:

(1)     Adjudge and declare that the 1994 SUP has expired, that FDEP's application to renew that permit has lapsed and cannot be found to be "sufficient" under 5 U.S.C. §558(c), and therefore, the USFS's denial of the Petition for Rulemaking by virtue of incorrect application of 5 U.S.C. §558(c) is "arbitrary, capricious, and otherwise not in accordance with law" under 5 U.S.C. §706(2)(a) of the APA;

(2)     Adjudge and declare that this Court issue a declaration that the USFS's failure to enforce the terms and conditions governing expiration of the SUP constitutes

"agency action unlawfully withheld," and "unreasonably delayed" under 5 U.S.C. §706(1) of the APA;

(3)     Adjudge and declare that this Court issue a declaration that the USFS's failure to enforce 36 C.F.R. §251.60(h)(2)(i) constitutes "agency action unlawfully withheld," and "unreasonably delayed" under 5 U.S.C. §706(1) of the APA;

(4)     Issue a mandatory injunction compelling the USFS to enforce the terms and conditions of the SUP at issue in this case, and to compel the USFS to enforce its own regulations that are triggered by the termination of a special use authorization;

(5)     Grant Plaintiffs their fees, costs, and expenses, including reasonable attorneys' fees as provided by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(6)     Grant Plaintiffs such additional and further relief as this Court deems just and proper.

Respectfully submitted by:

Jane West, Esq.
jane@janewestlaw.com
Gennaro Scibelli, Esq.
gs@janewestlaw.com
Jane West Law, P.L.
24 Cathedral Place
Suite 504
St. Augustine, FL 32084
(904) 471-0505
*Attorneys for Plaintiff*