UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**FLORIDA DEFENDERS OF THE
ENVIRONMENT, a Florida not-for-profit
Corporation, BRUCE KASTER, and
JOSEPH LITTLE,**

      **Plaintiffs,**

v.                                  **Case No. 3:17-cv-01128-J-20JBT**

**UNITED STATES FOREST SERVICE,**

      **Federal Defendant.**

_____/

## O R D E R

**THIS CAUSE** is before the Court on "Federal Defendant's Motion to Dismiss and Associated Memorandum of Law" (Doc. 25), "Plaintiffs' Response to Federal Defendant's Motion to Dismiss and Supporting Memorandum of Law and Motion to Strike Amended Administrative Record" (Doc. 28), and "Federal Defendant's Reply in Support of Federal Defendant's Motion to Dismiss and Response to Plaintiff's Motion to Strike" (Doc. 30).

## I. BACKGROUND

The subject of the above-captioned lawsuit is the Kirkpatrick Dam, Rodman Reservoir, and Eureka Lock and Dam (collectively referred to herein as the "Rodman Dam") located, in part, in the Ocala National Forest. The construction of the Rodman Dam was completed in 1968 as part of the larger Cross Florida Barge Canal. The Canal was subsequently deauthorized by Congress in 1991. The property interests held by the U.S. Army Corps of Engineers, and the structures built and completed for purpose of constructing the Canal, including the Rodman Dam, were transferred to the State of Florida. (Doc. 1, ¶ 3; Doc. 25, pg. 2). Because, according to

1

the Complaint, approximately 167 acres of land, together with part of Kirkpatrick Dam and Eureka Lock are located on land owned by the United States, the State of Florida was required to apply for a special use permit. (Doc. 1, ¶ 3).

Plaintiff Florida Defenders of the Environment is a non-profit organization in Florida focused primarily on the "preservation, protection, and restoration of Florida's freshwater resources," environmental initiatives and conserving public lands (Doc. 1, ¶ 10). Plaintiff Bruce Kaster is a lawyer and member of the Board of Trustees for Florida Defenders of the Environment. Plaintiff Kaster frequently recreationally visits the land at issue in this matter (*Id.*, ¶ ¶12-13). Plaintiff Joseph Little is the Vice President of Florida Defenders of the Environment and a law professor.[1]

In 1994, the State of Florida first applied to Defendant United States Forest Service ("USFS") for a special use permit to occupy, at least portions, of the Rodman Dam. (Doc. 1, pg. 2; Doc. 1, ¶ 3). A "permit" is defined by the United States Department of Agriculture, Forest Service Regulations as "a special use authorization which provides permission, without conveying an interest in land, to occupy and use National Forest System land or facilities for specified purposes, and which is both revocable and terminable." 36 C.F.R. § 251.51. Florida's permit application was granted; and the permit issued in 1994.[2] By its terms, the 1994 Permit was to expire in 1998. Nevertheless, according to USFS, it was extended twice by USFS, before finally expiring in 2002. (Doc. 25, pg. 3).

Defenders assert that the extensions were given to allow the Florida Department of Environmental Protection, ("FDEP") to "adhere to the implementation schedule for partial

---

[1] The Plaintiffs will be collectively referred to herein as "Defenders."

[2] The 1994 Special Permit will be hereinafter referred to as the "1994 Permit."

restoration of the Ocklawaha River. Restoration never occurred, and [the 1994 Permit] was never renewed. Today, FDEP is occupying Ocala National Forest both without a permit and in violation of the terms of the original [1994 Permit], long since expired." (Doc. 1, ¶ 4).

USFS, in contrast, describes the 1994 Permit as being extended on two occasions for three reasons: (1) to enable analysis under the National Environmental Policy Act; (2) to allow consultation between USFS and the U.S. Fish & Wildlife Service; and (3) to allow for a decision to be made on Florida's renewed permit application. (Doc. 25, pg. 3). According to USFS, Florida applied for a renewed permit in 2002, which was approved by USFS, causing the 1994 Permit to lapse. Florida did not sign the 2002 permit draft, thereby causing it to lack validation. USFS recounts that it had a similar interaction with the State of Florida in 2010, whereby it sent a draft permit to the State, but it never returned a signed copy to USFS as required.[3] (*Id.*).

In December of 2016, Plaintiffs Kaster and Little filed a Petition for Rulemaking with the Secretary of Agriculture and the Chief of USFS, requesting the issuance and implementation of rules to enforce the terms of the 1994 Permit; and the issuance of rules to "redress the continuing failure of USFS to manage the Ocala National Forest in a manner that furthers the desired future

---

[3] Defenders contends FDEP's refusal to complete the process required for special use permits was part of its larger dereliction of the land at issue in this case. Specifically, Defenders alleges that the FDEP "refused to accept the permit" issued by the USFS in 2002 (Doc. 1, ¶ 30), further noting, "Although the basis for refusing the new [permit] terms is not explicit in the rejection of the same, upon information and belief, the basis for refusal was because FDEP did not want to comply with the terms that required restoration on a scheduled basis." (*Id.* at n. 14). With regard to the 2010 draft permit, Defenders recounts,

> [a]s part of the condition for the issuance of the new [permit], the USFS drafted an operating plan for the maintenance of the portion of the Kirkpatrick Dam located on USFS lands, as well as lands inundated by Rodman Pool. Critically, the USFS also required FDEP to execute the newer [permit] within thirty (30) days of March 19, 2010. FDEP refused.

*Id.* at 37.

conditions, goals, and objectives of the Forest Plan for the National Forests in Florida." (Doc. 1, ¶ 33). USFS denied the Petition in March of 2017. Defenders contend the denial of the Petition was disconnected from the history of the matter, applies the wrong law, and does not address the fact that the 1994 Permit does not authorize renewal. (Doc. 1, ¶ 36). In June of 2018, after the institution of this action, USFS issued a revised denial letter based on different grounds.

## II. CLAIMS

On October 10, 2017, Defenders brought this action seeking declaratory and injunctive relief with the aim of preventing additional damage to, and ensuring the restoration of, the Ocala National Forest. Specifically, Defenders seek the Court's assistance in addressing the "ongoing destruction of the Ocklawaha watershed stemming from the dredging of the Cross Florida Barge Canal, and the construction and ongoing maintenance of [the Rodman Dam]." (Doc. 1, ¶ 1). Defenders allege the Kirkpatrick Dam has impounded the Ocklawaha River, causing critical ecological injuries. *Id* at ¶ 2.

Three of the five counts in Defenders' Complaint revolve squarely around the 1994 Permit; specifically the lack of enforcement of the 1994 Permit and the use of the Rodman Dam by the State of Florida without a permit. The Defenders allege: "[t]he inaction by the USFS as to enforcement of its own regulations has spanned over fifteen (15) years since the 2002 expiration of the [1994 Permit], and has spanned over seven (7) years since the final determination and lapse of the FDEP's application for renewal." (Doc. 1, ¶ 82).[4]

In Count I of the Complaint, Defenders allege USFS violated the Federal Land Policy Management Act, 43 U.S.C. § 1761(a)(1), and applicable regulations, 36 C.F.R. § 251.50-65, by

---

[4] For reasons explained herein, the Court does not reach the issue brought to the forefront by Defenders' theory of the case summarized, in part, here—the effect of application of the statute of limitations.

4

allowing the FDEP to occupy a portion of the Kirpatrick Dam, Eureka Lock and federal lands without a valid special use permit; and that this lack of action is "arbitrary, capricious, and otherwise not in accordance with applicable law under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*" (Doc. 1, ¶ 51). In Count III, Defenders allege that the (expired) 1994 Permit contained terms and conditions that require compensation for damage done to natural resources by the permit holder, removal of structures on the land, and require restoration of the land by the permit holder. (Doc. 1, ¶ 77). Defenders claim the failure of USFS to enforce the terms of the 1994 Permit against the FDEP is agency action unlawfully withheld and unreasonably delayed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Similarly, in Count IV, Defenders allege USFS' failure to enforce its regulation, 36 C.F.R. §251.60(h)(2)(i), which outlines actions taken "upon revocation or termination of a special use authorization," in the face of the expiration of the 1994 Permit likewise constitutes action unlawfully withheld or unreasonably delayed under the APA, § 706(1).[5] Count II of the Complaint relies, indirectly on the 1994 Permit, but grounds its plea for relief on the denial of Plaintiff Little and Kaster's Petition for Rulemaking as "arbitrary, capricious, and not otherwise not in accordance with law" under the APA, § 706(2)(a).[6]

USFS moves to dismiss all claims in this matter pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) on four, independent grounds:

(1) The APA does not authorize judicial review of the USFS' denial of Plaintiffs Little and Kaster's Petition for Rulemaking;

(2) Counts III and IV request action that the USFS cannot be compelled to undertake;

---

[5] Count V requests mandatory injunctive relief. It is not a substantive count. *See* Doc. 1.

[6] As previously outlined, USFS issued a revised decision letter in June of 2018 after the filing of this action. Defenders did not move to amend the Complaint.

(3) All of the Defenders Claims are barred by the Statute of Limitations;

(4) Count II is mooted by USFS' June 2018 decision letter.

(Doc. 25).

### III. ANALYSIS

The Federal Land and Policy Management Act does not provide a private right of action against the United States. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). Therefore, Defenders alleged violations of this statute must be brought through the APA. *See Id.; Marsh v. Oregon Natural Res. Council*, 490 U.S. 360 (1989) (reviewing an alleged violation of the National Environmental Policy Act under the APA); *RB Jai Alai, LLC v. Sec'y of Fla. Dept. of Transp.*, 47 F. Supp. 3d 1353, 1364-65 (M.D. Fla. 2014) (applying the APA's six-year statute of limitations to an action brought under National Environmental Policy Act and Federal-Aid Highway Act). "The APA's comprehensive provisions for judicial review of 'agency actions' are contained in 5 U.S.C. §§ 701–706." *Hill v. Grp. Three Hous. Dev. Corp.*, 799 F.2d 385, 396 (8th Cir. 1986). Thus, to the extent the claims at issue are subject to judicial review, they are reviewable under the APA.

The Court first addresses USFS' argument that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject-matter jurisdiction under the APA as this matter concerns "agency action [] committed to agency discretion by law."[7] § 701(a)(2). The question of whether an Agency's inaction is subject to

---

[7] Defenders argue that USFS' motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) should not be considered because it was made after the responsive pleading was filed. (Doc. 28, page 6). However, as the Defenders themselves point out, "challenges to this Court's subject-matter jurisdiction may be raised at any time." *Id*; *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

review under the APA is a jurisdictional question. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003). *See also Riverkeeper, Inc. v. Collins*, 359 F.3d 156 (2d Cir. 2004).[8]

Likewise, the question of whether action by a federal agency is "committed to agency discretion by law" is also a jurisdictional question that may be analyzed under Federal Rule of Civil Procedure 12(b)(1). *Conservancy v. Sw. Fla. v. U.S. Fish and Wildlife Serv.*, 677 F.3d 1073 (11th Cir. 2012); *Salmon Spawning and Recovery All. v. United States Customs and Border Enf't*, 550 F.3d 1121, 1128 (Fed. Cir. 2008).

Because the Court is evaluating the portion of a motion to dismiss brought pursuant to a Rule 12(b)(1) challenge, the Court is permitted to look outside the Complaint to complete its analysis. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (internal quotations omitted) (explaining the difference between facial and factual attacks on subject-matter jurisdiction and noting that in a factual 12(b)(1) motion "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.")

The APA "creates a basic presumption of judicial review [for] one 'suffering legal wrong because of agency action.'" *Weyerhaeuser Co. v. United States Fish and Wildlife Serv.*, 139 S.Ct. 361, 370 (2018) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)(quoting 5 U.S.C. § 702)). An agency may rebut the presumption only if, the statute at issue precludes judicial review or, relevant here, the agency action is "'committed to agency discretion by law.'" *Id.* (quoting 5

---

[8] Defenders claim the Court has federal question jurisdiction as it alleges violations of the APA. (Doc. 28, Section II). Nevertheless, judicial review is unavailable "'to the extent that . . . agency action is committed to agency discretion by law'" is a "limitation to the general grant of jurisdiction contained in 28 U.S.C. § 1331"). *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987)(quoting 5 U.S.C § 701(a)(2).

U.S.C. § 701(a)(2)).

Defenders allege the following actions (or, more aptly put, inactions) by USFS are "arbitrary and capricious, and otherwise not in accordance with applicable law," pursuant to § 706(2)(A): (1) allowing FDEP to occupy and operate the Rodman Dam without a valid special use permit (Count I); and (2) the denying Plaintiffs Kaster and Little's Petition for Rulemaking (Count II). They also allege USFS's failure to enforce its own regulations allegedly triggered by the expiration of the 1994 Special Use Permit (Count III & IV) constitutes, "agency action unlawfully withheld," and "unreasonably delayed" under § 706(1) of the APA.[9] Defenders, do not discuss the applicability of §§701(a)(2) to this case.

A unanimous Supreme Court recently explained:

> [t]his Court has noted the "tension" between the prohibition of judicial review for actions "committed to agency discretion" and the command in § 706(2)(A) that courts set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." A court could never determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable. To give effect to § 706(2)(A) and to honor the presumption of review, we have read the exception in § 701(a)(2) quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion . . . .
>
> The few cases in which we have applied the § 701(a)(2) exception involved agency decisions that courts have traditionally regarded as unreviewable, such as the allocation of funds from a lump-sum appropriation, or a decision not to reconsider a final action.

*Weyerhaeuser*, 139 S.Ct. at 370 (internal quotations and citations omitted).

The exception from judicial review contained in Section 701(a)(2) is a closely guarded one, to be sure. But as the Supreme Court explained earlier this year, while the exception of

---

[9] "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)(emphasis in original).

§ 701(a)(2) is narrowly applied; it is still properly applied to "certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion, such as a decision not to institute enforcement proceedings, or a decision by an intelligence agency to terminate an employee in the interest of national security. *Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2568 (2019) (internal quotations and citations omitted) (distinguishing the taking of the United States Census as an area *not* typically committed to the discretion of the Department of Commerce).

The decision by an agency not to enforce or prosecute, whether it be through civil or criminal process, is generally committed to that agency's "absolute discretion" in recognition of that determination's "general unsuitability for judicial review."[10] *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). That unsuitability, the Court explained is because:

> an agency decision not to enforce involves complicated balancing of a number of factors which are peculiarly within its expertise. Thus the agency must not only assess whether a violation has occurred, but whether agency resources best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed, whether the agency has enough resources to undertake the action at all.

*Id.* at 831-32. In *Chaney*, inmates sentenced to death by lethal injection petitioned the Food and Drug Administration ("FDA") alleging the use of certain drugs for the purpose of lethal injection

---

[10] Justice Alito, in his concurrence in *Department of Commerce* summarized a variety of factors courts should consider in deciding whether the presumption established in favor of judicial review have been rebutted, including: (1) whether the text and structure of the statute provides a meaningful standard against which to judge the agency's exercise of discretion; (2) whether the matter has been traditionally committed to the discretion of the agency; (3) whether the action being challenged is generally unsuitable for judicial review because it involves a complicated balancing of a number of factors including judgments regarding the division of agency resources or matters otherwise committed to another branch of government; and (4) whether judicial review would be disruptive practically. *Dep't of Commerce*, 139 S.Ct. at 2597-98 (internal citations and quotations omitted).

violated the Federal Food, Drug, and Cosmetic Act. The inmates asked the FDA to take enforcement action to stop the usage of the drugs. In holding the FDA's decision not to take enforcement action was not subject to judicial review, the Court noted the FDA's stance on the issue;

> shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch—not to indict—a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be faithfully executed.'

*Id.* at 832 (quoting U.S. Const., Art. II, § 3)).

Here, like in *Chaney*, the heart of the Defenders claims are that the USFS abdicated its responsibility by taking no action: by failing to enforce the terms of the 1994 Permit, and/or renew it, and failing eject the FDEP from its occupation of the Rodman Dam. *See* Doc. 1 (¶ ¶ 46-91). This action, as was the case in *Chaney*, is essentially an action to compel a federal agency, to take an action soundly within the purview of its prosecutorial discretion. USFS, not the Court, is best situated to determine whether the ejection of FDEP, for example, is the most effective way to effectuate ecological restoration and "manage the Ocala National Forest in a manner that furthers the desired future conditions, goals, and objectives of the Forest Plan for the National Forests in Florida." (Doc. 1, ¶ 33). *See also Webster v. Doe*, 486 U.S. 592, 599-600 (1998) (holding agency decision to terminate an employee because of national security interests unreviewable under § 701(a)(2)); *Salmon Spawning and Recovery All.*, (noting that to the extent the agency violated the Endangered Species Act by not enforcing a ban, it was unreviewable under § 701(a)(2)); *Sierra Club v. Larson*, 882 F.2d 128 (4th Cir. 1989) (holding that the agency's failure to enforce advertising directives of the Highway Beautification Act was not reviewable); *Elec. Privacy Info. Ctr. v. Fed. Trade Comm'n*, 844 F. Supp. 2d 98 (D.D.C.

2012)(holding an agency's decision whether or not to act when a party violated a consent order it signed with the agency was a "quintessential enforcement decision," not subject to judicial review). *Cf Weyerhaeuser*, 139 S.Ct. at 370 (holding that an agency's decision not to exclude certain lands from designation as dusky gopher frogs' critical habitat "involved the sort of routine dispute that federal courts regularly review: An agency issues an order affecting the rights of a private party, and the private party objects that the agency did not properly justify its determination under a standard set forth in the statute.").

The Court finds various modes of enforcement of the 1994 Permit, to be "one of those areas traditionally committed to agency discretion." *Dep't of Commerce*, 139 S.Ct. at 2568. However, its analysis is not complete. Where a challenger can identify guidelines by which a Court can be guided in enforcing a statutory scheme, they may overcome the presumption of §701(a)(2). *Chaney*, 470 U.S. at 833-34.[11] *See also Dep't of Commerce*, 139 S.Ct. at 2568 (analyzing first that the administration of the census was not one of the areas traditionally regarded as committed to agency discretion under § 701(a)(2) before then determining that the statute at issue in the case was not drawn so that the Court lacked a "meaningful standard" by which to judge agency action."). The *Chaney* Court explained that a statute being administered may, in some cases "[withdraw] discretion from the agency and provide guidelines for exercise of enforcement power." *Chaney*, 470 U.S. at 834 (citing *Dunlop v. Bachowski*, 421 U.S. 560 (1975))(overruled in part on other grounds). *See also Federal Election Com'n v. Akins*, 524 U.S. 11, 20 (1998) (noting that while a decision not to bring an enforcement action for a violation is

---

[11] Stated otherwise, agency enforcement decisions may still be subject to judicial review by demonstration that "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement power." *Id.* at 834.

typically not subject to judicial review, the Supreme Court was confronted with the Federal Election Campaign Act that "explicitly indicat[ed] to the contrary.").

Thus, the Court moves on to the question of whether the statutory scheme at play here presents guidelines by which the Court's review USFS failure to act with respect to the 1994 Permit or in its denial of the Petition for Rulemaking. *Conservancy of Sw Fla.*, 677 F.3d at 1078. USFS argues that there are no statutory enforcement guidelines to overcome the presumption that this matter is committed to the discretion of USFS. (Doc. 25). Defenders do not address this argument and do not cite any authority to overcome the presumption.

In Count I, (Doc. 1, ¶ 47) Defenders cite to the Federal Land Policy and Management Act, 43 U.S.C. § 1761(a)(1). However, that section, provides in part, that the Secretary "[is] *authorized* to grant, issue or renew rights-of-way[12] over, upon, under, or through such lands [within the National Forest System] for—(1) reservoirs, canals, ditches, flumes, laterals, pipes, pipelines, tunnels, and other facilities and systems for the impoundment, storage, transportation, or distribution of water." 43 U.S.C. § 1761(a)(1). From a plain reading, it is clear that this statute permits or allows USFS to take certain action. It does not *require* it to take any particular action. *Cf Dunlop*, 421 U.S. at n. 2 (recounting that the statute at issue read that the Secretary of Labor "shall" investigate a complaint, and if he finds probable cause to find that a violation of the law occurred, he "shall" bring a civil action.).

The other substantive section of the Federal Land Policy and Management Act Defenders identify USFS violated is 43 U.S.C. § 1765. Similarly, §1765 provides

Each right-of-way shall contain—

---

[12] The phrase "right-of-way" includes, "an easement, lease, permit, or license to occupy, use, or traverse public lands granted for the purpose listed in subchapter V of this chapter." § 1702(f).

(a) terms and conditions which will (i) carry out the purposes of this Act and rules and regulations issued thereunder; (ii) minimize damage to scenic and esthetic values and fish and wildlife habitat and otherwise protect the environment; (iii) require compliance with applicable air and water quality standards established by or pursuant to applicable Federal or State law; and (iv) require compliance with State standards for public health and safety, environmental protection, and siting, construction, operation, and maintenance of or for rights-of-way for similar purposes if those standards are more stringent than applicable Federal standards; and

(b) such terms and conditions as the Secretary concerned deems necessary to (i) protect Federal property and economic interests; (ii) manage efficiently the lands which are subject to the right-of-way or adjacent thereto and protect the other lawful users of the lands adjacent to or traversed by such right-of-way; (iii) protect lives and property; (iv) protect the interests of individuals living in the general area traversed by the right-of-way who rely on the fish, wildlife, and other biotic resources of the area for subsistence purposes; (v) require location of the right-of-way along a route that will cause least damage to the environment, taking into consideration feasibility and other relevant factors; and (vi) otherwise protect the public interest in the lands traversed by the right-of-way or adjacent thereto.

43 U.S.C. § 1765.

The Court finds USFS' argument on this point persuasive. (*See* Doc. 25, pg. 10). Section 1765 does not provide enforcement guidelines to this Court. Moreover, to the extent one could argue § 1765(a) provides guidance, that so-called guidance is based on wholly idiosyncratic, non-quantifiable, and vague factors that are not within the Court's purview. *Chaney*, 470 U.S. at 831-32. *See, e.g.* § 1765(a)(ii) (requiring each right-of-way to contain terms and conditions "(ii)minimize[ing] damage to *scenic* and *aesthetic* values . . . and *otherwise protect the environment*") (emphasis added). Section 1765(a) does not provide enforcement guidance to the

13

degree the Supreme Court in *Chaney* identified was outlined in the statutory scheme in *Dunlop* or in the recent decisions of *Department of Commerce* or *Weyerhaeuser*.[13]

The Court turns to the question of whether the regulations identified by Defenders provide guidance for the Court. Defenders object to the USFS failure to initiate enforcement and ask the Court to "enter a judgment providing the following relief: Adjudge and declare that the USFS's failure to enforce 36 C.F.R. § 251.60(h)(2)(i) constitutes "agency action unlawfully withheld" and "unreasonably delayed.'" (Doc. 1, Count III, ¶ 68; *see also* Count IV, ¶ 82(1), Count V, ¶ 91(3)-(4)). They maintain this is violation particularly acute because the 1994 Permit contains a provision that mandates compensation for damage to natural resources by the permit holder, requires the removal of structures built on the land by the permit holder, and directs the restoration of the land by the permit holder; and such remedial action has not been taken. *Id.*

Section 251.60(h)(2)(i) provides:

> Upon revocation or termination of a special use authorization, the holder must remove within a reasonable time the structures and improvements and shall restore the site to a condition *satisfactory to the authorized officer*,[14] unless the requirement to remove structures or improvements is otherwise waived in writing or in the authorization. If the holder fails to remove the structures or improvements within a reasonable period, *as determined by the authorized officer*, they shall become the property of the United States, but holder shall remain liable for the costs of removal and restoration.

36 C.F.R. §251.60(h)(2)(i)(emphasis added).

---

[13] Moreover, the Court notes that the failure the Defenders identify here on the part of USFS is to enforce the terms of an expired permit, not the failure to issue a new permit. *See*, e.g. Doc. 1, ¶ 49 ("The [1994] Permit does not provide for renewal, and because the permit expired and was not timely reapplied for before its expiration, the USFS lacks the discretionary authority to renew and/or reissue a new permit.") (citing 36 CFR § 251.56(b)(1), 64). Thus, it is questionable as to whether §1765(a)(1) provides *guidance as to the failure to enforce* the 1994 Permit at all.

[14] According to the terms of the 1994 Permit, the authorized officer is the Forest Supervisor of the USFS, or a subordinate officer so delegated. (Doc. 1, Exhibit A).

14

Plainly, § 251.60(h)(2)(i) pointedly and specifically leaves the removal of "structures and improvements" by a holder of a special use authorization that has been revoked a terminated to the discretion of the "authorized officer." Thus, the regulations leave room and flexibility for USFS to determine how to deal with its permit holders in light of the complexities inherent in that determination.[15]

The Court turns its attention to the verbiage of the 1994 Permit itself. It provides in part:

> IV.    Liability
>
> B. Damage to Property of the United States
>
> 1. The holder shall compensate in full the United States for damages occurring under the terms of this permit or under any law or regulation applicable to the National Forests. The holder shall be liable for all injury, loss, or damage, including fire suppression, or other costs associated with rehabilitation or restoration of natural resources, associated with the holder's use or occupancy. Compensation shall include, but is not limited to, the value of resources damaged or destroyed, the costs of restoration, cleanup, or other mitigation, fire suppression or other types of abatement costs, and all administrative, legal (including attorney fees), and other costs in connection therewith.
>
> V. Termination, Revocation, and Suspension
>
> D. Removal of Improvements. Upon abandonment, revocation, termination, or expiration of this authorization, the holder shall remove within a reasonable time prescribed by the authorized officer all structures and improvements, except those owned by the United States, and shall restore the site. If the holder fails to remove all structures or improvements within the prescribed period, they shall become property of the United States and may be sold, destroyed or otherwise disposed of without any liability to the

---

[15] Other sections of the regulations at issue make the discretionary nature of policies surrounding permit issues clear. *See, e.g.* Renewals, 29 Fed. Proc., L. Ed. § 66:576 (citing § 251.64(b) for the proposition that "when a special use authorization does not provide for renewal, it is discretionary with the authorized officer, upon request from the holder and prior to its expiration, whether or not the authorization will be renewed.").

> United States. However, the holder shall remain liable for all cost associated with their removal, including cost of sale, impoundment, cleanup, and restoration of the site.

(Doc. 1, Exhibit A).

The terms of the 1994 Permit outline the responsibilities of the holder of the permit to the USFS, not the enforcement responsibilities of the USFS. The 1994 Permit "furnish[es] no meaningful standard" by which to judge USFS enforcement decision. *Dep't of Commerce*, 139 S.Ct. at 2568.

The fact that the USFS denied Plaintiffs Little and Kaster's Petition for Rulemaking, made, in essence, to require USFS to take enforcement action, does not require a different result. *See Conservancy of Sw Fla.*, 677 F.3d 1073 (holding an APA challenge to an agency's denial of petitions was not subject to judicial review pursuant to § 701(a)(2)).

## IV. MOTION TO STRIKE

Defenders included a Motion to Strike the lodging of the Amended Administrative Record of this matter in their Response in Opposition to the Motion to Dismiss (Doc. 28). For all of the reasons succinctly set forth by USFS in its Response to Plaintiff's Motion to Strike, the Court is not persuaded striking the Amended Administrative Record would be proper in this matter. (Doc. 30, pgs. 1-3).

## V. CONCLUSION

The Court holds enforcement action or inaction by USFS regarding the 1994 Permit and USFS' decision on the related Petition for Rulemaking is committed to the discretion of USFS, not subject to judicial review. The exception provided by 5 U.S.C. § 701(a)(2) is indeed a narrow one; but it is applicable to this matter. The Court is without jurisdiction.

ACCORDINGLY, it is **ORDERED:**

1. "Federal Defendant's Motion to Dismiss and Associated Memorandum of Law"

   (Doc. 25) is **GRANTED**;

2. Defenders' "Motion to Strike the Amended Administrative Record" (Doc. 28, in part)

   is **DENIED**;

3. Defender's Complaint (Doc. 1) is **DISMISSED** with prejudice;

4. The Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this _30s_ day of September, 2019.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

**Copies to:**
Jane West, Esq.
Hayley Carpenter, Esq., USDOJ

17